UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH BROWN,<br><br>        Petitioner,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | **MEMORANDUM<br>& ORDER**<br><br>10 Civ. 2380 (LBS)<br>05 Cr. 857 (LBS) |

SAND, J.

Petitioner Kenneth Brown, appearing *pro se*, filed the instant petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Petitioner was found guilty after a jury trial in this Court of one count of conspiracy to commit wire fraud and three counts of wire fraud, and was sentenced to sixty months imprisonment on the conspiracy count, to run concurrently with sentences of eighty-seven months imprisonment on the wire fraud counts. Petitioner now raises two grounds for relief. First, he claims that his trial counsel was ineffective. Second, Petitioner claims that newly discovered evidence proves his actual innocence. Petitioner has filed additional motions requesting discovery during the pendency of his § 2255 petition.

For the reasons set forth below, the petition and accompanying motions are denied.

**I.    Background**

The following facts were established at trial. Petitioner and his co-conspirators Kenneth Sheppard, John Gompper, and Paul Chovanec conducted a fraudulent "advance fee" scheme which purported to offer investors millions of dollars to invest in so-called

1

high-yield investment programs ("HYIPs").  In exchange for a substantial advance fee, Petitioner and his co-conspirators would offer investors access to millions of dollars of funds, available for investing in HYIPs.  While Petitioner and his co-conspirators did not claim to own these funds, they claimed that they had the authority to make the funds available to investors.  Sheppard recruited victims of the scheme on an internet website and referred them to Petitioner after obtaining their bank account statements and other financial information.

Petitioner posed as financier for the scheme.  He promised victims that he would provide a "proof of funds," a document claiming to show bank account balances of millions of dollars available for victims to fund their HYIP investments, and that he would make these funds available if the victims found HYIPs acceptable to him.  In return, Petitioner charged his victims a fee of up to 8% of the amount to be financed.  Co-conspirator Chovanec provided Petitioner with documents purporting to be the "proofs of funds," and received a share of the scheme's proceeds in return.

Petitioner and his co-conspirators defrauded three victims: Wallace Roy, David Vo, and Christian Bernard.  Petitioner promised these victims that he would hold their advance fees in an escrow account in the name of his company, Wellington Investment Holdings LLC ("Wellington"), until sending a "proof of funds" and funding their investment accounts. Instead, Petitioner deposited the victims' funds in his personal checking account and used them almost immediately to purchase luxury goods and pay off his co-conspirators.  Wallace Roy received his "proof of funds" over a month after sending his advance fee to Petitioner, and after Petitioner had already looted Roy's funds for his personal use.  The "proof of funds" Petitioner provided to Roy consisted of bank

documents for an account at Citibank in Switzerland held by a company called Trescorp Limited. Petitioner sent David Vo the same Trescorp documents after looting Vo's advance fee to make a down payment on a home, but neither Vo's nor Trescorp's banks could verify the account. Petitioner then sent Vo bank documents for an account held by a company named WorldReach; he claimed that this was his company, but provided no documentary proof. Vo requested a corporate resolution from WorldReach that would give him access to the account, but Petitioner refused, and instead sent statements for an account in the name of Jean Baptiste Vivet. Finally, Petitioner gave Christian Bernard the documents for the Vivet account. From the three victims, the co-conspirators netted approximately $1.2 million; from this amount, Petitioner paid $50,000 to Sheppard and $50,000 to Gompper.

An undercover operation conducted by the FBI resulted in Petitioner's arrest and halted the fraudulent scheme. Following his arrest, Petitioner told FBI agents that he had no source of capital or "proofs of funds" other than co-conspirator Chovanec and a company he ran called Clarion Asset Incorporated; that he did not conduct due diligence on these "proofs of funds"; that the money in the Vivet account was not under his control, and he did not know whether the account existed or how much money it contained; and that none of his clients successfully used the "proofs of funds" to invest in HYIPs.

Petitioner was indicted on August 16, 2005. Petitioner pleaded not guilty and proceeded to trial before this Court on June 7, 2006. On June 15, 2006, the jury found Petitioner guilty of all four counts of the indictment. After conviction, Petitioner filed a motion for a judgment of acquittal pursuant to Fed. R. Crim. P. Rule 29(c), and in the alternative for a new trial pursuant to Fed. R. Crim. P. Rule 33. On October 11, 2006,

this Court denied Petitioner's motion. *United States v. Brown*, No. (S1) 05 Cr. 857 (LBS), 2006 WL 2930204 (S.D.N.Y. Oct. 11, 2006). Petitioner was sentenced on February 8, 2007 to sixty months' imprisonment on Count One, to run concurrently with sentences of eighty-seven months' imprisonment on Counts Two through Four, followed by a three-year term of supervised release, along with the mandatory special assessment of $400 and asset forfeiture of $1,204,990. Petitioner appealed to the United States Court of Appeals for the Second Circuit, and on September 25, 2008, the Second Circuit affirmed Petitioner's conviction by summary order. *United States v. Brown*, 293 Fed. Appx. 826 (2d Cir. 2008). Petitioner filed a petition for a writ of certiorari to the Supreme Court of the United States, which was denied on February 23, 2009. *Brown v. United States*, 129 S.Ct. 1388 (2009). Petitioner filed the instant petition pursuant to 28 U.S.C. § 2255 in this Court on March 17, 2010. He subsequently filed an Emergency Motion to Perpetuate Testimony on December 29, 2010; this Court denied the motion on June 27, 2011. On June 30, 2011, Petitioner filed a Motion to Enforce Unopposed Discovery; this Court denied that motion on July 8, 2011.

**II.   Discussion**

   **A. Ineffective Assistance of Counsel Claim**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two part test to determine whether or not counsel's assistance is ineffective. 466 U.S. at 687. First, Petitioner must show that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* "The proper measure of attorney performance remains simply reasonableness under prevailing professional

norms." *Id.* at 688. Second, the defendant must show that the deficient performance prejudiced the defense, which requires that petitioner show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* If Petitioner cannot establish both *Strickland* prongs, his claim fails. "There is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697; *see also Cousart v. Hammock*, 745 F.2d 776, 778 (2d Cir. 1984).

Petitioner claims that his trial counsel was ineffective for three reasons: (1) he had a conflict of interest, (2) he failed to assert a defense of good faith, and (3) he called on Petitioner to concede guilt at trial.

### i. Trial Counsel's Alleged Conflict of Interest

"A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002) (internal quotation marks and citation omitted). Three types of conflict of interest will result in ineffective assistance of counsel: (1) a *per se* conflict, (2) "a potential conflict of interest that results in prejudice to the defendant," and (3) "an actual conflict of interest that adversely affects the attorney's performance." *Armienti v. United States*, 313 F.3d 807, 810 (2d Cir. 2002) ("*Armienti II*"). *Per se* conflicts occur in only "two limited circumstances: where defendant's counsel was unlicensed, and when the attorney has engaged in the defendant's crimes." *Winkler v. Keane*, 7 F.3d 304, 308 (2d Cir. 1993). Neither applies to the instant case.

"An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" *Winkler*, 7 F.3d at 307 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). To meet the actual conflict standard, "a defendant must show that an actual conflict existed and, then, must demonstrate that this conflict adversely affected defense counsel's performance." *Armienti II*, 313 F.3d at 811. "To prove adverse effect, the defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Armienti v. United States*, 234 F.3d 820, 824 (2d Cir. 2000) ("*Armienti I*"). "Once the defendant has established that an actual conflict exists, he need not prove prejudice, but simply that a lapse of representation resulted from the conflict." *Armienti II*, 313 F.3d at 811.

Here, Petitioner argues that his trial counsel had an actual conflict of interest regarding a matter critical to his defense. Specifically, he contends that his attorney—Kenneth Breen, then of the law firm Fulbright & Jaworski LLP—failed to secure foreign bank documents regarding the Trescorp and Vivet accounts because his firm also represented Citibank, which held the Trescorp account. He further alleges that these documents would have confirmed the existence of these accounts and shown that Petitioner and/or his company Wellington had access to those accounts. As a result, he claims, production of these documents would have proven Petitioner's innocence. These claims are meritless.

6

Petitioner has failed to show that Breen had an actual conflict of interest between his representation of Petitioner and his firm's representation of Citibank. Any such claim is belied by Breen's sustained efforts to obtain bank documents for the Trescorp and Vivet accounts with the assistance of outside counsel. Breen submitted subpoenas to Citibank and Credit Suisse, argued to the Court that the documents were important for Petitioner's case, and retained outside counsel, an attorney named Patricia Pileggi, to file a motion to compel these documents, which Citibank contested. Petitioner argues that Breen frustrated Pileggi's efforts, but offers no evidence for this assertion. Moreover, Petitioner's claim that Breen had a conflicting interest with Citibank fails to explain why Breen did not obtain documents from Credit Suisse, holder of the Vivet account. Petitioner does not allege that Breen or his law firm had a conflicting interest with Credit Suisse.

Breen's decision to cease pursuing the documents, and instead obtain a ruling precluding the Government from contesting the authenticity of the bank accounts, was a strategic decision rather than the product of a conflict of interest. Breen stated to the Court that he encountered difficulty in obtaining the Trescorp and Vivet records because the banks involved were foreign. Tr. April 3, 2006 Hearing, Gov't Mem. Ex. B, at 5:13–6:15. Bank records for the WorldReach account were easier to obtain because the account was at a domestic bank, Wachovia, and Breen duly secured them for Petitioner. These records failed to yield any exculpatory evidence. Given these difficulties, Breen reasonably concluded that an order precluding the issue of the accounts' authenticity would accomplish the same goals as discovery of the documents, but with much less delay and expense. Such "decisions which fall squarely within the ambit of trial strategy

. . . if reasonably made, will not constitute a basis for an ineffective assistance of counsel claim." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.), *cert. denied*, 484 U.S. 957 (1987). In short, Petitioner has failed to demonstrate that discovery of the bank documents was "inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *United States v. Schwarz*, 283 F.3d 76, 92 (2d Cir. 2002) (internal quotation marks and citation omitted). Therefore, Petitioner has failed to show an actual conflict of interest adversely affected his attorney's performance at trial.

Finally, claims of conflict of interest that do not qualify as *per se* or actual conflicts are treated as potential conflicts. A potential conflict exists where "the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998). "In order to prevail on such a claim, the petitioner must establish both that counsel's conduct fell below an objective standard of reasonableness and that, but for this deficient conduct, the result of the trial would have been different, under the familiar standard established by *Strickland v. Washington* . . . ." *Armienti I*, 234 F.3d at 824.

Petitioner fails to meet the second prong of the *Strickland* standard, requiring prejudice due to the alleged ineffective assistance of counsel, because he cannot show that the alleged conflict of interest affected Breen's representation of him. Petitioner claims that the decision to preclude the Government from contesting the authenticity of the bank accounts was fatal to his case, because it allowed the Government to contest Petitioner's control over the accounts. He claims that the bank documents would have shown his control over the accounts and thus proven his innocence. Petitioner offers no evidence whatsoever to support these claims. He alleges that his unindicted co-

conspirator Chovanec told him that the Government possessed documents proving his innocence, but offers no proof of Chovanec's statements, and fails to name these documents.[1]

Petitioner cites this Court's statement in the charging conference that if the jury were instructed to assume that the accounts' owners authorized Petitioner to use the "proofs of funds," such an instruction would be tantamount to an acquittal. According to Petitioner, this remark proves that Breen's conflict directly caused his conviction. Petitioner is mistaken; this Court made the remark to merely outline the possible consequences for Petitioner's case if he successfully established that he had control over the accounts. Again, Petitioner has still failed to provide such proof. Petitioner repeatedly cites his counsel's assertions that the bank documents were important to Petitioner's case, but such assertions are not facts, and they do not establish the contents of those documents. Finally, as noted above, Breen successfully obtained the bank documents for the WorldReach account, and they did not show that Petitioner had control over them. Petitioner has offered no evidence showing that the documents for the Trescorp and Vivet accounts would have contained exculpatory information missing in the WorldReach documents.

Accordingly, Petitioner fails to establish that his trial counsel had a conflict of interest which resulted in ineffective assistance of counsel under the Sixth Amendment.

    **ii.  Trial Counsel's Alleged Failure to Assert a Good Faith Defense**

---

[1] Petitioner also asserts that two individuals could have testified to his authority over the bank accounts, but that they were unavailable because of "criminal exposure they faced based on Government threats of arrest, prosecution of Brown's alleged unindicted co-defendant Paul Chovanec." Pet. Mem. at 46. Petitioner does not name these individuals, and does not allege that his trial counsel attempted or should have attempted to have them testify at trial. Nor does he argue that the Government should have granted immunity to these unnamed individuals so that they could have testified on Petitioner's behalf. In any event, such immunity would not have been granted. "Claims for defense witness use immunity have been uniformly rejected" by the Second Circuit. *United States v. Turkish*, 623 F.2d 769, 772 (2d Cir. 1980).

9

Petitioner claims that his trial counsel did not assert a good faith defense, and in support recites an account of his business activities and the circumstances surrounding his initial questioning by the FBI. However, trial counsel repeatedly raised a good faith defense throughout the trial and argued that the Government had failed to establish Petitioner's intent to defraud. *See, e.g.*, Tr. 39:16-42:20, 735:17–736:1, 743:6–18. In turn, this Court instructed the jury on the defense of good faith. Tr. 796:17–23. Therefore, Petitioner's claim that his counsel was constitutionally ineffective for failing to raise a good faith defense is meritless.

### iii. Trial Counsel and Petitioner's Alleged Admission of Guilt

Petitioner argues that his counsel called on him to admit guilt at trial. Despite the fact that Breen argued for Petitioner's innocence, Petitioner now contends that when his counsel conceded that the investment plans in the case were frauds, Tr. 32:8–11, 718:14–19, he was essentially calling upon Petitioner to concede guilt. Petitioner misconstrues his counsel's statements. Breen argued to the jury that the fraud originated not with Petitioner, but with the promoters who offered the plans to the investors who then sought Petitioner's assistance. While the plans were fraudulent, Breen maintained that "they were the investors' plans; they were not Mr. Brown's plans." Tr. 34:23–24. The investors "were duped by promoters who told them the plans would work, not Mr. Brown." Tr. 718:16–17. In other words, "the investment plans were created by promoters trying to steal Mr. Brown's money." Tr. 43:7–8.

Breen's theory of the case was the product of a rational trial strategy designed to exculpate Petitioner. At no point did Breen make any concession that implicated

Petitioner or called on him to admit guilt. Therefore, Petitioner's claim that his counsel was constitutionally ineffective for calling upon him to admit guilt is meritless.

### B. Actual Innocence

#### i. Petitioner's Claim of Newly Discovered Evidence

Petitioner's claim of actual innocence relies upon his assertion that newly discovered evidence exonerates him. He maintains that the holder of the Worldreach account, whom he does not name, allegedly stated in an interview with the Government before trial that he had authorized Chovanec, Petitioner's unindicted co-conspirator, and his company Clarion American Asset Management, Inc. to use the account. Petitioner also alleges that the Government interviewed Jean-Paul Vivet, who allegedly confirmed that documents found on Petitioner's computer were authentic and valid, that money existed in the Vivet account, and therefore Petitioner actually possessed the authority that he claimed in his representations to the alleged victims in this case. Petitioner also cites a telephone call with Chovanec, after the former's arrest, during which Chovanec allegedly told Petitioner that he had warned Vivet not to enter the United States for fear of immediate arrest. Finally, Petitioner claims that after trial Chovanec spoke with Petitioner's appellate attorney, Susan G. James, stating that he wanted to assist Petitioner because he believed he was facing a terminal illness. After Chovanec recovered, he was allegedly no longer willing to help Petitioner. Petitioner maintains that this evidence exonerates him, and that the Government failed to disclose it to him before trial.[2]

---

[2] In his Response to the Government's Opposition to his Motion to Perpetuate Testimony, filed on June 6, 2011, Petitioner offered a document purporting to be a notarized affidavit from Jean-Baptiste Vivet, notarized on May 2, 2011, attesting that he possessed an account with Credit Suisse Zurich and had agreed to enter the investments originated by Petitioner. As discussed *infra*, Petitioner has offered no reason why he could not have offered this evidence at trial or on appeal, and it is therefore barred from consideration. In any event, the Second Circuit has held that an affidavit filled out by an individual residing abroad was "a legally insufficient basis for collateral relief." The affiant "had nothing to lose" in signing the affidavit

11

The United States Court of Appeals for the Second Circuit has held that "new evidence in § 2255 proceedings . . . is evidence that is discovered after the original hearing, and which could not, with due diligence of counsel, have been discovered sooner." *Giacalone v. United States*, 739 F.2d 40, 43 (2d Cir. 1984) (internal quotation marks and citation omitted). "In order to obtain" relief under § 2255 "based upon newly-discovered evidence, petitioner bears a heavy burden of convincing the court that the newly-discovered evidence would have resulted in an acquittal." *Pri-har v. United States*, 83 F. Supp. 2d 393, 399 (S.D.N.Y. 2000). "Such motions 'based upon previously-undiscovered evidence [are] ordinarily not favored and should be granted only with great caution.'" *Id.* (quoting *United States v. Stofsky*, 527 F.2d 237, 243 (2d Cir. 1975). Finally, to argue that this evidence demonstrates his actual innocence, "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner's allegations do not constitute new evidence under these standards. First, Petitioner has offered no reason why he could not have raised the alleged evidence regarding the Vivet and Worldreach accounts at trial. Nor does he explain why he could not have spoken with Chovanec before trial. Finally, he does not mention why he did not raise the substance of his conversations with Chovanec on appeal. Therefore, his claim regarding allegedly new evidence is procedurally barred from consideration on a § 2255 motion.

---

while abroad, if he in fact did so, because he was "not subject to cross-examination." There was "no point in holding a hearing unless [the affiant] appears to testify in person." *United States v. Moreno-Ortiz*, 983 F.2d 15, 17 (2d Cir. 1993). The purported Vivet affidavit suffers from the same defects, and Petitioner does not state that Vivet is prepared to testify before this Court on Petitioner's behalf. Thus, "there is no new evidence justifying relief." *Id.*

Second, Petitioner fails to substantiate his allegations that new evidence exists. He only offers a single-page "Verification of Facts and Allegations Stated in All Documents Filed as Part of this § 2255 Action," which merely affirms the claims made in his Memorandum of Law without offering any citations to the record or supporting evidence. Moreover, documentary evidence of the conversations cited by Petitioner belies his claims. Transcripts of the FBI's interviews with Edward Gilbert, holder of the WorldReach account, flatly contradict Petitioner's assertion that Gilbert told the Government that he had authorized Chovanec to access the account. On the contrary, Gilbert stated that he did not know Petitioner, that he told Chovanec that "he was not interested," Government Opp'n Pet. Ex. D, Tr. Interview Aug. 7, 2005, 1–2, and that he "did not provide [Chovanec] with anything nor was he authorized to use the [WorldReach] funds." *Id.* Tr. Interview Jan. 27, 2006, 2. Gilbert's statements were corroborated by a member of WorldReach's board, Joseph Palladino, who stated that "at no time did WORLD REACH INTERNATIONAL get a contract from a bank, nor did they ever pledge their funds or authorized [*sic*] Chovanec to use the funds in any trading program." Government Opp. Pet. Ex. E, Tr. Interview May 21, 2006, 3.

Chovanec's disclosures in his telephone conversation, as reported by Petitioner without any supporting evidence, are not material even if accepted as true. Chovanec's alleged warning to Vivet not to enter the United States does not establish that Chovanec's testimony would have been material to Petitioner's claims, would have constituted new evidence exonerating him. As for Chovanec's claim that the Government knew that all the bank accounts involved were real, Petitioner again fails to establish that this assertion

13

alone, even if proven, does not show that either he or Chovanec had any access to or authority over the accounts.[3]

### ii. Petitioner's Claim of a *Brady* Violation

Petitioner accuses the Government of withholding exculpatory evidence from him at trial, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. "[I]nformation not disclosed to the defense creates constitutional error warranting a new trial only when that information is material . . . ." *United States v. Gambino*, 59 F.3d 353, 354 (2d Cir. 1995). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "Conclusory allegations that the government 'suppressed' or 'concealed' evidence do not entitle [Petitioner] to relief . . . ." *Harris v. United States*, 9 F. Supp. 2d 246 (S.D.N.Y. 1998).

---

[3] In his Response to the Government's Opposition to his Motion to Perpetuate Testimony, filed on June 6, 2011, Petitioner attached a Complaint, a motion to voluntarily dismiss Relief Defendant Nevada Sentry Service Corp., and an order dismissing that defendant in *Securities & Exchange Comm. v. Correll et al.*, No. 4:05-CV-472 (RAS) (E.D. Tex. Aug. 12, 2007). Petitioner cites the SEC's allegations in the *Correll* Complaint, which claim that Chovanec was the president of Nevada Sentry Service Corp., that he presented himself as Vivet's representative in the United States, and that Chovanec provided a document purporting to be a "proof of funds" for $100 million. *Correll* Compl. ¶¶ 23, 48-49. Petitioner claims that the dismissal of these allegations against Nevada Sentry Service establishes that Chovanec was Vivet's representative and did have the authority to grant access to the funds. In effect, he urges that the dismissal endowed these allegations with preclusive effect, and that this Court must accept these allegations as fact. "To have a preclusive effect on specific issues or facts, however, a voluntary dismissal also must be accompanied by specific findings sufficient for a subsequent court to conclude that certain matters were actually decided." *Muhammad v. City of Peekskill*, No. 06-CV-1899 (KMK), 2008 WL 4452355, at *5 n.9 (S.D.N.Y. Sept. 30, 2008). The court in *Correll* made no specific findings in its summary dismissal order. It neither affirmed nor rejected the plaintiff's claims in the Complaint, making no conclusion as to whether Chovanec made these representations, or whether they were truthful. Given the complete absence of factual findings by the *Correll* court, the order of dismissal has no preclusive effect on this subsequent action.

Petitioner's claims of a *Brady* violation are without merit. First, as discussed *supra*, Petitioner has not identified any material exculpatory evidence that the Government failed to turn over to him. The record refutes his claim that the holder of the WorldReach account granted Chovanec access to the account. Petitioner has not established that the Government interviewed anyone in control of the Vivet account, and has failed to allege any evidence showing he had control of or access to that account. His telephone conversation with Chovanec also fails to establish that Petitioner had control of or access to any of the accounts involved in this case.

Second, Petitioner failed to raise this claim on direct appeal, and it is therefore procedurally barred from consideration on his § 2255 motion. The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). A § 2255 petitioner seeking "collateral relief based on trial errors to which no contemporaneous objection was made," who "already has had a fair opportunity to present his federal claims to a federal forum" must show "both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Id.* at 165, 167–68.

Petitioner does not address his procedural default and provides no justification for it. Nor does he demonstrate that he lacked knowledge of or access to the allegedly new evidence at trial or on appeal. Petitioner does allege that Chovanec offered to assist his appellate counsel, then retracted the offer, presumably offering this claim as justification for his failure to raise his claims at trial or on direct review. However, Petitioner did not require Chovanec's assistance to offer any of the alleged new evidence he now presents,

because this evidence consisted of Government interviews with other parties and a conversation Petitioner had with Chovanec.  Therefore, Petitioner's *Brady* claim is procedurally barred.  *See, e.g.*, *United States v. Bryser*, 10 F. Supp. 2d 392 (S.D.N.Y. 1998) (holding *Brady* claim procedurally barred by failure to raise claim on direct appeal); *Mendez v. United States*, Nos. 94 Cr. 466, 99 Civ. 3496 (JFK), 2002 WL 1402321, at *6 (S.D.N.Y. June 28, 2002) (*Brady* claim not raised on appeal precluded from consideration on § 2255 motion).

In sum, Petitioner's claim of actual innocence is meritless.

### III. Petitioner's Motions for Discovery

#### A. Petitioner's Rule 6(a) Motion

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Rule 6(a) of the Rules Governing § 2255 Proceedings for the United States District Courts states that a judge "may, for cause, authorize a party to conduct discovery," and if necessary appoint an attorney for the moving party.  However, no evidentiary hearing is necessary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  28 U.S.C. § 2255(b).

Together with his § 2255 petition, Petitioner filed a separate Motion for Discovery under Rule 6(a), requesting all documents related to the proofs of funds he presented to victims, any documents or statements made regarding the various bank accounts at issue, and any documents or statements provided to the Government by Chovanec, Vivet, Citigroup, Trescorp, and other entities.   He argued that he had established good cause for discovery based on his claim of a *Brady* violation.

16

Petitioner filed a subsequent Motion to Enforce Unopposed Testimony on June 30, 2011. Petitioner mistakenly claimed that the Government had failed to respond to his original Rule 6(b) motion, when in fact the Government had argued in its brief opposing Petitioner's § 2255 motion that no evidentiary hearing was required because the record showed that he was "entitled to no relief" pursuant to 28 U.S.C. § 2255(b). Accordingly, Petitioner's Motion to Enforce Unopposed Testimony was denied on July 8, 2011.

Turning to the Rule 6(a) motion itself, the Second Circuit has held that a hearing is not required "where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous." *United States v. Seiser*, 432 F.2d 809, 812 (2d Cir. 1970). Where a district court presided over a habeas petitioner's trial, was "intimately familiar with the detailed factual record," and considered the defendant's habeas petition "based on this familiarity," the court "did not commit reversible error when it dismissed the habeas claim without an evidentiary hearing." *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990). Here, Petitioner's request for discovery involves his claim of a *Brady* violation, and as discussed *supra*, this claim is procedurally defaulted. Moreover, as also discussed *supra*, none of the new evidence Petitioner seeks is genuinely exculpatory. Petitioner cannot establish that the Government violated *Brady*, or that a hearing would yield any evidence entitling him to relief. In short, this is a case where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Accordingly, Petitioner's motion for discovery pursuant to Rule 6(a) of the Rules Governing § 2255 Proceedings for the United States District Courts is denied.

### B. Petitioner's Other Motions

Petitioner filed an Emergency Motion to Perpetuate Testimony on December 29, 2010, seeking the appointment of counsel to secure Chovanec's testimony and claiming that a letter from a retired judge attested to Chovanec's illness. The Government stated that it had attempted to verify Petitioner's claims without success. This Court denied the motion on June 27, 2011, finding that Petitioner had failed to explain why he could not have obtained Chovanec's testimony on appeal. On July 18, 2011, Petitioner filed a Motion for Reconsideration of this Court's June 27 order.

"Reconsideration of a previous order by the court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 407 (S.D.N.Y. 2010) (internal quotation marks omitted). Local Rule 6.3 requires that motions for reconsideration set forth concisely "the matters or controlling decisions which counsel believes the court has overlooked." The moving party "may not advance new facts, issues or arguments not previously presented to the Court." *Aikman v. Cnty. of Westchester*, 691 F. Supp. 2d 496, 498 (S.D.N.Y. 2010) (internal quotation marks omitted). A motion for reconsideration "is not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided." *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002).

Petitioner argues that his claims of ineffective assistance of counsel adequate explain his failure to present Chovanec's testimony at trial. As discussed *supra*, these claims are without merit. Moreover, Petitioner's claims concern an alleged conflict with

Citibank that supposedly prevented his trial counsel from obtaining bank records that he maintains would have exonerated him. In bringing these claims, Petitioner never argued that this alleged conflict with Citibank prevented his counsel from obtaining Chovanec's testimony. He only contended that his counsel failed to pursue the Citibank bank account records because of his firm's representation of Citibank. He now offers no reason why this alleged conflict with Citibank—since found to be meritless—has anything to do with his failure to seek Chovanec's testimony at trial or on appeal. Petitioner's motion attempts to draw a wholly untenable connection between his claim of ineffective assistance of counsel and his claim that Chovanec's testimony would have exonerated him. This new argument, not previously presented to the Court, may not be considered on a motion for reconsideration, and is meritless in any event. Accordingly, Petitioner's Motion for Reconsideration is denied.

On June 29, 2011, Petitioner filed a Motion for Disclosure of Documents Placed in Safe. This motion is dismissed as moot.

**IV.  Conclusion**

Petitioner's motion to vacate, set aside, or correct his sentence; his accompanying Rule 6(a) motion for discovery; his Motion for Reconsideration of this Court's June 27, 2011 order; and his Motion for Disclosure of Documents Placed in Safe are all denied. The Clerk of Court is directed to close this case.

Petitioner has failed to make any substantial showing of a denial of a constitutional right. Accordingly, the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and

therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: August 1, 2011
New York, NY

_____
U.S.D.J.